I want to spend a couple of minutes on the procedural due process claim. The District Court found that the plaintiffs had no standing to assert this claim because the decision was final on the first minor boundary line adjustment before they purchased their property. And we believe this misconstrues the nature of the civil rights claim, that you can have finality under State and local law of an administrative decision for State and local purposes. But for Federal civil rights purposes, you may not have finality. Because here, the Federal civil rights claims that there was an overall scheme to illegally put two houses on one partial and that various stratagems were used to implement that scheme. The primary stratagems were to use a minor boundary line adjustment procedure, which is legally not applicable or appropriate for that purpose. This may help. I'm trying to be helpful here, just analytically. There are two different ways in which standing might be at issue in Federal court. One of them is the Article 3 standing. Has there been an injury sufficiently concrete and so on to satisfy Article 3? It seems to me that clearly has been satisfied. The next question is whether you can state a cause of action under the various provisions under which you're seeking to state a cause of action. And I'm not sure whether a standing analysis really helps you. You might as well just say, okay, do I have a cause of action as, and then you describe your facts, you know, your clients bought the parcel after the approval. Does that state a cause of action so and so? I'm not sure standing is really a very useful inquiry once you've decided that they're Article 3 standing. I agree, and that is helpful, Your Honor. We attempted to brief it in that way. The opposition parties have used it. And we may still lose, but at least we're just talking about the causes of action. Understood. And focusing our attention on them. And I agree. And I think that the Ks do have a cause of action because the project, the illegal scheme here was to put two houses on the parcel. That wasn't completed by the county planning authorities until they approved the modified second minor boundary line adjustment in 2003. How do you get to that point? That is to say, those seem to me two quite different adjustments. One was the adjustment of the, as it were, the boundary line between what became two is a setback. Well, both of them were based on this fundamental flaw, which is that you can adjust boundaries within a parcel. And the plaintiff's contention and allegation is that this is one parcel. And this line between them is arbitrary and unfounded in the law, that it was never two parcels. So the scheme required adjusting this imaginary line, our illegal line, for purposes of having two parcels. Well, I understand that argument. What I'm having trouble with is the argument that the second adjustment means that the first adjustment wasn't final. Oh, well, because the house that was allowed by the first adjustment couldn't stay there unless the second adjustment was allowed because it violated the county code for setbacks. And so it would have to be dismantled or moved. But they couldn't move it to the other side of the property because there would be a setback problem there. Isn't that just an accident of where they put the house, though? I'm not sure how their engineering and construction company ended up doing this to them. Obviously, they thought they were home free after the first boundary line adjustment. Or they could have built a smaller house. That is to say, I don't see that the problem that necessitated the second adjustment necessarily followed from the first. It's probably true as a factual matter, it didn't necessarily follow. But it's also true as a factual matter that it did follow. And therefore, the second one was essential to completing the scheme, because without it, the scheme fails. They have to take the house down. They have to move the house if they can. But I don't think they could because the setback problem would exist on another boundary. Or they have to reduce the size of the house. So the degree of deprivation of my client's interest is directly connected to the existence of the second approval of the second MVLA. So the other point I wanted to make about this is that the Horn versus County of Ventura case is more similar to this case than perhaps we noted in our brief. Because there, the property owner who was adjacent to the proposed subdivision bought after the planning department had approved and while the developer's appeal was pending before the Board of Supervisors. Well, there, because the developer appealed, no issues relating to neighboring owners' concerns were legally at issue. And that's what the Board of Supervisors said. Well, you didn't appeal and nobody else from a neighboring ownership appealed. So we're going to restrict the appeal to the developer's contention about the condition the developer didn't like. Well, and the California Supreme Court said, well, no. But this local law about what's final and what's not final will not control the civil rights deprivation of procedural due process inquiry. As long as that agency had an opportunity before it was finally done with the project to address the neighboring owner's concerns, then the civil rights violation or claim was still in play. Let me review the betting in the sense of a sort of a broad description of the facts. And you can correct me if I make a mistake on a point that's relevant to you. We have here a lot that is subdivided or put into two, I'm not quite sure what the proper terminology is, following no notice to the then landowner that's adjoining. Your client at that point is not that landowner. Your client purchases after this process of adjusting that first boundary line has been completed, unless we buy your argument that the second one is a continuation of that same process. Your client then objects to the house that goes up shortly after he purchases. But he's a successor in interest to the earlier person, to the earlier owner. And he'd, that first one was, I would call it completed in a lay sense before he purchases the property. Is that right? That's correct. It is a factual matter in terms of the timeline. But there's another point there. The predecessor was not given notice. Nobody in the neighborhood was given notice. But as I understand the applicable law, if this is appropriately this sort of a minor boundary line adjustment, there's no statutory or code requirement for notice. Is that right? That is true. It's a minister. According to the regulations, it's a ministerial act. And I think the deeper answer to the court's point is that this was a sham, as alleged in the complaint. Using the minor boundary line adjustment procedure was a complete sham because it's not appropriate. It's not legal for this situation. You cannot use it where you have one parcel. And so they pulled the procedure off the shelf that would allow them to avoid notice because the minor boundary line adjustment, when properly used, doesn't require notice. When improperly used, doesn't require notice either. That was their method of implementing a scheme to get the two houses on the parcel without. But even if notice had been required, it would have gone to the predecessor in interest of your client. Right. And then my client would have known about it. And Horn. Well, could your client have known? I assume that an ordinary title search and so on would have, you know, this was not secret, was it? The records were available in the county offices, but my client did not look at the records, looked at his own property's records. I think that's probably fairly common for people buying a house is they don't look at every in a residential. This is not out in the unzoned countryside or liberally zoned countryside. This is a residentially zoned area, one family home per parcel. And so I think I understand Lake Tahoe in Placer County. Where is it? Lake Tahoe. It's above Carnelian Bay overlooking the lake. OK. I see I'm down to two minutes and 10 seconds. I want to save some time for rebuttal. So I'd like to make a couple of points about the other claims. Well, before you go away from it, are you saying there is or isn't a conspiracy involving the county or are you saying the county was hoodwinked? No, I appreciate that point. It was made in the opposition brief. The county was was complicit in its own in the defrauding of the county. The county allowed that to happen intentionally, knowingly, and then turned around and participated in passing that fraud on to the Tahoe Regional Planning Agency by Mr. Rosasco writing a letter saying these are two legal parcels when they clearly were not. And certainly we're dealing with a motion to dismiss. We've alleged they're not. And that must be accepted as true. The county knowingly went along with this duping, if you want to call it duping. But they were not an innocent victim because they were violating virtually every regulation they have having to do with minor boundary line adjustments. Didn't require a title report. At the time, it was, as I said, it was a sham in many respects. So just a point on the substantive due process claim. The district court didn't seem to have a problem with the idea that the case have a property interest for purposes of procedural due process. It quarreled with the substantiality of the deprivation of that and said that there wasn't enough evidence of substantial deprivation and therefore had no claim there. But then it turned around and said there's no property interest at all for substantive due process purposes. There's a disconnect there. Clearly there's a property interest for substantive due process claims or for it for that claim because they have a property next door and Horn recognizes that property interest is sufficient for procedural due process purposes. There's no reason it wouldn't be sufficient to at least establish the existence of a property interest for substantive due process purposes. The recent case in my 28J letter, Borrello and Sons, I think adds to, I'm running out of time actually. So let me. Why don't we hear from the other side and then we'll give you a minute and rebuttal. Thank you very much. Good morning, Your Honor. David Huskey for the Placer County Appellees. With respect to the procedural due process claim, I think the major flaw in plaintiff's theory is that there is not sufficient harm alleged to give rise to a duty of notice and hearing. This case is unlike the other cases that have been cited to the court, Horn and Harris and Harrison, in that the harm here alleged and argued in the brief is much more ephemeral. In Horn, there was a lot split creating four new properties, which increased traffic, which is alleged here, but also blocked access to the property owner's property, which is a significant physical problem. Are you going to rest your argument on the fact that the harm here is just not very big rather than that there's some of that's a that's a bad place to rest your argument because if you're conceding harm and otherwise the claim is good, I'm inclined to think you've got a problem. Well, Your Honor, it goes to the standard for procedural due process that there has to be a substantial and significant injury to property to give rise to a duty of notice and hearing. I think it's fairly obvious that if a large house goes up next door, very close to the property line, that you didn't want to be there obstructing various forms of view. It's inevitably going to have some harmful effect on property value on view or whatever. So it seems to me that there's harm. It may not, you know, you can dispute as to whether or not it's $10 worth of harm or $10 million worth of harm, but there's going to be some harm. Well, Your Honor, I believe that the cases have required more harm than has been alleged in this one because the harm here, you're right, it is related to the putting in of a large house. The minor boundary line adjustments were not relevant to the putting of a large house. That could have happened anyway. The only thing that happened with the minor boundary line adjustments is it allowed the original house to be moved, but the house next door, the two stories with the snow and rain sloughing off the roof, the minor boundary line adjustment wasn't even necessary. What are you saying? That the original house could have been trashed and the big one built in its place? Exactly. I mean, that would have no minor boundary line adjustment would have been required. The only thing the minor boundary line adjustment did was that allowed the second house to be moved lower. But the harms that he's alleged, the snow going against the fence, which, by the way, they concede they installed the fence as a mitigation measure for building the large house, is causing a runoff, well, that could have happened regardless of the minor boundary line adjustments because that house, the larger house could have been built anyway. Well, but I mean, I don't really want to rest too much on this, meaning obviously the reason they want the minor boundary line adjustment and to be able to move the other house and build the other one is that it is to their overall economic advantage just to have two houses rather than one on the lot. And once you reduce the economic cost or rather increase the benefit to it, they may or may not proceed. So you could say, of course, they could have scraped it, but if it was going to cost them a lot more money, they might not have done it. Well, in addition, as Your Honor pointed out in the other argument, they were not the owners when this came about. I'd rather go to that sort of argument because, well, let me ask you this. Do you concede their point that in fact a minor boundary line adjustment was not appropriate under the circumstances given the nature of that lot? No, Your Honor. I don't believe that. The way they're presenting the allegation in this case is that a minor boundary line adjustment was brought to the Minor Boundary Line Adjustment Committee sort of fraudulently to the county. We perceive the county perceived it as a minor boundary line adjustment, a ministerial act that didn't require notice. But it sounds as though what you did was to create a boundary line where none had previously existed. It didn't sound like you adjusted one. It sounds as though you basically took one lot and divided it. Isn't that what happened? Well, that is what they are alleging. Well, what did happen? What do you say happened? No. We're saying that didn't happen. Had there previously been a boundary line, more or less, where this one was and this was an adjustment of it? Yes. The information had by the county was there were two small parcels owned by one owner. I see. Okay. And the owner then applies for an adjustment to create a billable lot next to the lot that they already have. Plaintiffs appear to be alleging that the county was duped, that in fact there was always one lot. This shouldn't have happened. But the information had by the county is the information that we relied upon. At most, there could be a negligence claim that we didn't do further research or enough research to try to figure out that we had been being duped. But I don't see how this can give rise to a constitutional deprivation by the county as far as equal protection class of one. For example, there's no, other than the conclusions of animus arbitrary capricious, the facts alleged appear to show mere negligence, that they simply didn't do enough research. And counsel was asked directly. But when you say negligence, that suggests that if they'd done enough research, they would have held that this was not a matter for minor boundary line adjustment or not? Well, Your Honor, on the facts, I don't know. We're still in the pleadings in this case. And frankly, I do not know the answer to that question. I haven't gone to look to the factually, specifically, to know exactly. I'm just saying what was presented to them according to the allegation of the complaint was that it was a minor boundary line adjustment. And they were given documents by the decorians that suggested that was the case if there were two parcels. Under those, under that scenario, I don't see how acting on that can arise to arbitrary capricious conduct that would support a substantive due process claim or an equal protection class of one claim, which requires animus. Now, if this had been a single parcel, and I understand your impression is that it was two parcels and they just wanted to adjust. If this had been a single parcel and what they had come in and asked for was could you subdivide this into two parcels so that we can build two houses, what would have been the requirements under, not constitutional law, but under county law of notice to surrounding neighbors? Any notice required at that point? Your Honor, I don't know the answer to that question. I am not sure. Had that been the case, whether under county code, a lot split that under these circumstances would have required notice, I am not sure. Doesn't that sound like an ordinary subdivision that would typically require notice? It sounds like that, but it might be for one split into two, that might be large enough to bring up a, you know, under the Subdivision Map Act. I would assume that it could require notice to neighbors, it could, but I don't know the answer to that question. If a buyer in this county was interested in what was going on in the neighboring parcels nearby, is it possible to find out if there are building permit applications, or zoning change applications, or boundary movement applications pending in some county department? Sure. The planning department, there are these, in fact, I believe the minor boundary line adjustment was recorded. So these are all, the information was available should the plaintiffs had chosen to look, but they would have to look on their neighbor's property, not their own. I want to go back though, just briefly, I'm running out of time here, I need to save time for my colleague, just briefly, even if the county code required notice to neighbors, that doesn't mean that it's required under due process under the Constitution. That's where it gets back to the Horne-Harris and Harrison line of cases, where more harm than has been alleged in this case was required to give rise to the notice and hearing requirements for due process. I believe I need to. Yeah, I didn't, as I recollect, you didn't alert us that you wanted to save time for your colleague. We're happy to hear from him, so, and we're not going to cut you off. We'll, you know, you get to say what you need to say. I apologize. That's all right. Good morning. May it please the Court. Chad Tapp on behalf of Appellees Roy and Gail Krikorian. I'm going to attempt to address the major issues in this. Thus far, my client did buy two separate parcels. How do we know that? That is what they purchased, Your Honor, to the best of their understanding. Well, but do we have any, I mean, we're at the pleading stage? Correct. We are at the pleading stage. And is that alleged in the complaint, that your client bought two parcels? No. And. So we don't know that. We do not know. We might learn that later. Possibly. Assuming there is one parcel, there were, however, two clearly separate boundary line adjustments involved in this case. But if there was one parcel, how can that first minor boundary line adjustment, in fact, be a minor boundary line adjustment? And my guess is that if you're taking one parcel and dividing it into two, that's not a minor boundary line adjustment under county code. Is that right? I do not know the answer to that. Assuming that what the plaintiffs have alleged is true, that it is one parcel, and that it was a continuous stream of events from the first boundary line adjustment into the second, even then, looking at the harm that's alleged and whether they were exceptionally affected, there has been nothing pled at this stage that rises to that level of harm. Second, looking at the equal protection violations, and I believe my colleague was leading into this, there have been no particularly identified similarly situated parties who have been treated more favorably than my clients in the Lake Tahoe area. There's no evidence presented and there are no facts pled as of today. Now, go along with me on this as an hypothesis, and I understand you, as a factual matter, you're not conceding this and so on, but assume for a moment that this on the county maps was a single parcel. Assume further that if two buildings were going to be constructed on this, what now is a single parcel, or one moved and a new one built, a new boundary line has to be established between what, at the moment, is one parcel and will become two, and assume further that if that's the procedure, the surrounding neighbors are entitled to notice that the lot is being divided into two. What consequence would then follow if that is true? To assume the other factors as alleged, that is to say no notice was provided, the current owners didn't own at that time, the earlier owners owned at that time, but they didn't get any notice, and therefore, they didn't know, and therefore, they didn't pass on the knowledge, so these clients buy without knowledge of what's about to happen, what has happened and what's about to happen. Well, Your Honor, that's a difficult question, because part of the... Well, you see, that's kind of what's alleged, right? That's partially what is alleged, but that hypothesis would also hinge on how the property is to be used. If, similar to our case, the minor boundary line adjustment was to put, in essence, a granny suite next door, you would still have to look at what level of harm is alleged and how similarly situated parties in the area have been treated. But, for example, I would think that people in the position of the case, if they're buying the house that they bought, it would affect whether they buy for the price they pay if they know that another structure is about to be built next door, and if they know that, for example, the lot has just been subdivided and has now got a new lot, and, well, the building hasn't been begun, it's likely, you know, that would affect the behavior of most rational buyers. That's possible, Your Honor. You could infer that. It could also be inferred based on the evidence that the activity by my clients increased the value of their neighbor's property. Is there any proof to that? We haven't gotten to that. What we have is a complaint where they say they don't like it. They don't like it, and that's what we're here for, and from our point of view, it's improper to use the federal courts, particularly the Ninth Circuit, as a zoning board of appeals, and that's what we're, in essence, doing here today, and those are the types of issues that were discussed. And with that, my time has, I think, has gone way over. I do appreciate you allowing me to do that. Thank you for the opportunity. May I request equal time? I didn't actually keep track of time of the opposing counsel. We'll let you say what you need to say. Thank you very much. Going to the sufficiency of the harm, this should be a matter of proof, not pleading. The degree of harm is something that's uniquely based on the testimony of the plaintiffs here, and because this is a pleading motion, there's been no testimony by the plaintiffs. There's simply the proffer of a proposed amendment that gives a detailed list of the kinds of harms that they have suffered. They include increased erosion. This is a very steep hillside just on the lakeside of the properties. It slopes steeply down. There's loss of privacy, loss of views, loss of the neighborhood character. All of these things affect property value, as Your Honor noted. And this is in the opposition brief that we filed in the district court, this long list of type of harms. But those are types of harm. But the degree of harm really should be a matter of proof and not pleading. Do you have in your complaint anything as to the notice that would have been required and that presumably then would have been provided to your client's predecessors in interest had this been a subdivision of one lot into two? I don't believe we have that in the complaint, but I do believe we have that in the opposition brief to the motion to dismiss. And it wasn't something that anybody argued needed to be alleged in the complaint, but certainly we could allege it, and I can give you the citation. It's a government... Let me understand your case in the strongest form that can reasonably be supported by your complaint. Your complaint is, listen, if they had done this the way they were supposed to, this was a single lot. This is not a minor boundary line adjustment. This is rather the subdivision of a single lot. If it had been treated as it should have been treated as a subdivision of a single lot, notice would have been acquired as a matter of county code, maybe in addition as a matter of Federal constitutional due process, but it certainly would have been provided as a matter of non-Federal law. Had that notice been provided, the existing, the then-existing owners would have known about it. They may or may not have objected, but they would have been required to pass it on as part of their duty of disclosure as they're selling that this has gone on. And therefore, your clients one way or the other would have known about it and it would have affected their behavior as they bought the lot. That's correct, Your Honor. That's, I think, the strongest version of your case. Yeah. And that notice, I can give you the site if you want it, Government Code 66474.7, requires notice in a public hearing for any subdivision and it would have happened. In this case, you have the additional wrinkle that there might have been some additional county action after that that would have been required as you had here where you had kind of a two or two-and-a-half step procedure to get to the end result. On the equal protection claim, the district court made two rulings. One is that we didn't identify any similarly situated people who were treated differently. And identifying is something that should happen at the proof stage. You know, that equal protection claim, speaking only for myself, is a loser. Well, it may be a loser on the facts, but I really don't think it's a loser on the pleadings. He's got another vote. I appreciate the advice, and it was free. But the plaintiff should have the opportunity to at least prove the allegation, which is that there are similarly situated people. And in my brief, actually, there's a number. You know, Lake Tahoe property owners are not a protected class under the equal protection clause. That's true. That's why this is a class of one type of claim. And there's no rational basis. And for that part of it, what we did ask to amend to allege the similarly situated people, the district court ignored that. And in my opening brief. Do you have anything else you want to say? Okay. You're not interested in that. I understand. Especially as we're over. But if you have something else you need to say beyond equal protection. Okay. No, that's all. Thank you very much. Thank you. Thank both sides for your argument. The case of Kaye v. Blasher County is now submitted for decision.
judges: Goodwin, W. Fletcher, Holland